NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTOR VAZQUEZ,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF HACKENSACK et al.,<br><br>　　　　　Defendants. | Civil Action No.: 21-12830<br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court by way of defendants the City of Hackensack's ("City"), as well as Mayor John P. Labrosse, Jr. ("Labrosse"), Deputy Mayor Kathleen Canestrino ("Canestrino"), Deputy Mayor David Sims ("Sims"), Council Member Leonardo "Leo" Battaglia ("Battaglia"), Council Member Stephanie von Rudenborg ("Rudenborg"), and City Manager Vincent Caruso's ("Caruso") (collectively, the "individual Defendants") motion to dismiss (ECF No. 15) plaintiff Victor Vazquez's ("Plaintiff") First Amended Complaint (ECF No. 14) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition (ECF No. 16), and Defendants replied (ECF No. 17). The Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion to dismiss is granted, and Plaintiff's First Amended Complaint is dismissed without prejudice.

**I.　　BACKGROUND[1]**

The instant action arises out of an allegedly improper search of an apartment in Hackensack, New Jersey conducted by Plaintiff and six other officers with the Hackensack Police Department, and the subsequent administrative disciplinary proceedings brought by the City related to the incident.

---

[1] The following facts are accepted as true for the purposes of the motion to dismiss.

Administrative Proceedings

Plaintiff alleges that in December 2016, he and other Hackensack Police Department officers investigated a Hackensack, New Jersey apartment for narcotics and weapons. ECF No. 14 at ¶ 13. Plaintiff claims that thereafter, an anonymous letter was sent to internal affairs, complaining that the officers involved in the investigation, including Plaintiff, acted improperly. *Id.* Plaintiff further claims that as a result of the letter, an internal affairs investigation into the matter was opened. *Id.*

Plaintiff asserts that, on May 9, 2017, Defendants filed administrative charges in the form of a preliminary notice of disciplinary action ("Disciplinary Action 1") against Plaintiff for violating the New Jersey administrative code and Hackensack Police Department regulations. *Id.* at ¶ 22. Plaintiff requested and received a hearing, which was presided over by a City of Hackensack official, to dispute the charges. *Id.* at ¶ 23. The hearing occurred between May and December 2017, and at its conclusion, the City issued a final notice of disciplinary action terminating Plaintiff and the other officers charged in the incident. *Id.*

Plaintiff alleges that while these charges were pending, the City brought additional charges against Plaintiff through two more preliminary disciplinary actions on or about September 1, 2017 ("Disciplinary Action 2") and on or about September 29, 2017 ("Disciplinary Action 3") for violations of additional New Jersey rules and departmental regulations. *Id.* at ¶¶ 24–25. These charges also sought Plaintiff's termination, and ultimately Plaintiff was issued final notices of disciplinary action in Disciplinary Action 2 and Disciplinary Action 3, both resulting in Plaintiff's firing. *Id.* at ¶ 26.

Plaintiff contends that after being terminated in Disciplinary Actions 1, 2, and 3, Plaintiff appealed the decisions to the New Jersey Civil Service Commission ("CSC") and its Office of

Administrative Law. *Id.* at ¶ 27. Pursuant to CSC regulations, the appeals were consolidated and heard before an administrative law judge. *Id.* at ¶¶ 27–28. At the City's request, the CSC bifurcated the proceedings, considering the appeals for Disciplinary Actions 1 and 3 together, and Disciplinary Action 2 on its own. *Id.* at ¶ 28. On February 8, 2019, an administrative law judge issued a decision as to the appeal of Disciplinary Action 1 and Disciplinary Action 3, reversing Plaintiff's termination, and ordered Plaintiff reinstated with a 90-day suspension and an award of backpay. *Id.* at ¶ 29. Both the CSC upon final administrative appeal, and a New Jersey appellate court upon final appeal upheld the administrative law judge's decision to reverse Plaintiff's termination.[2] ¶¶ 30, 50. Similarly, in June 2021, an administrative law judge dismissed all charges filed against Plaintiff in Disciplinary Action 2, and reversed Plaintiff's termination in that proceeding. *Id.* at ¶ 41. The CSC affirmed the decision on July 21, 2021. *Id.* at ¶ 48.

Defendants' Alleged Misconduct

Before the CSC issued its order reinstating Plaintiff, Plaintiff alleges that Mayor LaBrosse made "various derogatory, slanderous, and libelous public statements concerning Plaintiff," calling Plaintiff a "criminal," and a "crooked, dirty," "bad" police officer, as well as describing him as "unfit for duty." *Id.* at ¶¶ 32, 38. Plaintiff alleges that Defendants knew these statements were false, but "did not correct . . . [the] statements by the Mayor thereby misleading the public that such statements were true." *Id.* at ¶ 32. Moreover, Plaintiff alleges that former City Manager Ted Ehrenburg ("Ehrenburg") made defamatory comments about Plaintiff at a public City meeting, and, like with the statements made by Labrosse, Plaintiff alleges that Defendant members of the

---

[2] The Court notes that while the CSC upheld the administrative law judge's decision to reverse Plaintiff's termination, the judge modified the terms of the penalty: Plaintiff was reinstated with a six-month suspension, and awarded backpay, benefits, and seniority for the period of the six-month suspension up to the date of reinstatement. *Id.* at ¶ 30.

3

City's governing body did not correct or retract the statements, "thereby misleading the public that such statements were true." *Id.* at ¶¶ 34–37.

Plaintiff further alleges that despite his reinstatement, Defendants did not restore him to active payroll until July 2021, and have yet to reinstate him to active duty. *Id.* at ¶ 49. Plaintiff also alleges that to be placed back on active duty he must undergo physical and psychological examinations, which other similarly situated officers have not been required to do. *Id.* at ¶ 52. Plaintiff claims that, as a result of the administrative proceedings and defamatory comments made by various City officials including Labrosse, Defendants have interfered with Plaintiff's employment opportunities and have "permanently stigmatized his reputation professionally and personally." *Id.* at ¶ 54. He also claims that Defendants' purportedly defamatory comments and requirement to be physically and psychologically examined both constitute retaliatory conduct for appealing his termination decisions to the CSC. *Id*. at ¶¶ 57, 76.

Procedural History

Plaintiff originally initiated this action on June 9, 2021 in the Superior Court of New Jersey for Bergen County, Law Division. *See* ECF No.1; *see also Vazquez v. City of Hackensack, et al.*, No. L-3764-21. On June 22, 2021, Defendants removed the action to this Court on the grounds that the Complaint asserted claims arising under federal law, pursuant to 28 U.S.C. § 1441(a). ECF No. 1. Thereafter, on October 28, 2021, Plaintiff filed a First Amended Complaint asserting claims for violations of: (1) the Fourteenth Amendment to the United States Constitution, Article One, Paragraphs One, Ten, and Eighteen of the New Jersey Constitution, and the New Jersey Civil Rights Act ("NJCRA"), New Jersey Statute Annotated § 10:6-2 (Count I); (2) common-law slander *per se*, libel, and defamation (Count II); (3) 42 U.S.C. § 1983 (Count III); and (4) the First Amendment to the United States Constitution under section 1983 (Count IV).

On November 12, 2021, Defendants filed a motion to dismiss Plaintiff's First Amended Complaint. ECF No. 15. Thereafter, on November 22, 2021, Plaintiff filed his opposition (ECF No. 16), to which Defendants replied on November 29, 2021 (ECF No. 17).

## II.     LEGAL STANDARD

### A.     Fed. R. Civ. P. 12(b)(6)

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

## III.    DISCUSSION

The Court finds, as explained further below, that Plaintiff fails to state a claim for relief in Count I to the extent he asserts a claim under the Federal Constitution, Count III, and Count IV. Moreover, because the Court dismisses all of the claims over which it has original federal question jurisdiction without prejudice, it declines to exercise supplemental jurisdiction over the state law claims asserted in Counts I and II.

### A. Federal Constitutional Claims Against the Individual Defendants (Counts I, III, and IV)

In Counts I, III, and IV, Plaintiff alleges various violations of his rights protected by the Constitution of the United States pursuant to section 1983. To adequately plead a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). When evaluating these claims, a court should first "'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitution right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (citation omitted).

Here, Plaintiff first claims that Defendants interfered with his interest in employment opportunities as protected by the Fourteenth Amendment's due process clause (Count I).[3] Second, Plaintiff contends that Defendants violated Plaintiff's protected interest in his reputation, and by damaging his reputation, Defendants have adversely impacted Plaintiff's current and future employment opportunities, in violation of the Fourteenth Amendment's due process clause under section 1983 (Count III). Third, Plaintiff alleges that Defendants violated his First Amendment right to appeal an adverse administrative decision pursuant to section 1983 by making defamatory statements about Plaintiff and subjecting him to psychological and physical examinations as a condition to reinstatement to active duty (Count IV). The Court considers each of Plaintiff's federal constitutional claims against the individual Defendants in turn.

---

[3] To the extent Plaintiff has asserted federal constitutional claims on their own, like in Count I, the Court construes them to have been brought pursuant to section 1983. *See Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (stating that claims of constitutional violations against state actors must be brought pursuant to section 1983).

### i. Employment Opportunity (Count I)

Plaintiff asserts that the individual Defendants have interfered with his interest in employment opportunities secured by the Fourteenth Amendment's substantive due process clause, in violation of section 1983. Generally, the ability to pursue an occupation is an interest protected by the Fourteenth Amendment. *See Thomas v. Independence Township*, 463 F.3d 285, 297 (3d Cir. 2006); *see also Hickerson v. New Jersey*, No. 08-cv-1033, 2009 WL 5218065, at *1 (D.N.J. Dec. 31, 2009). However, to assert a claim related to the constitutionally protected interest of pursuing an occupation, a plaintiff must show "an actual inability to pursue a chosen profession." *Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp. 3d 554, 568–69 (W.D. Pa. 2019) (citations omitted).

Here, Plaintiff alleges that statements made by the individual Defendants about Plaintiff while his termination decision was on appeal to the CSC were harmful to his reputation and adversely impacted his opportunities for employment. *See* ECF No. 14 at ¶¶ 58, 61, 71. Specifically, Plaintiff alleges that LaBrosse made public statements, published in print and online publications, challenging Plaintiff's fitness to serve as a police officer and improperly implying, through the use of derogatory language, Plaintiff was a criminal. *Id.* at ¶¶ 32, 33, 36. Plaintiff asserts that these statements have interfered with his employment opportunities, including reinstatement to the Hackensack Police Department. *Id.* at ¶ 32.

Although Plaintiff alleges that an injury to his reputation has negatively impacted his employment prospects, these allegations of reputational harm are insufficient to sustain a substantive due process claim for interfering with employment opportunities. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399–404 (3d Cir. 2000) ("[D]efamatory statements that curtail a plaintiff's business opportunities do not suffice to support a substantive due process

claim."); *see also see also Hart v. W. Mifflin Area Sch. Dist.*, No. 16-cv-1066, 2016 WL 7157212 at *3-*4, (W.D. Pa. Dec. 8, 2016) ("[T]o the extent Plaintiff claims that he has suffered loss of future employment as a result of the publication of these online statements, his allegations are insufficient, as he alleges (if anything) only a generalized threat of lost future employment opportunities."). Further, to the extent Plaintiff alleges that the individual Defendants' harmful statements adversely impacted his ability to be reinstated with the Hackensack Police Department, that argument is unavailing. The Fourteenth Amendment protects an interest to generally "pursue a calling or occupation," rather than "the right to a specific job." *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994). Accordingly, Plaintiff has insufficiently pleaded a substantive due process violation on the basis of interfering with employment opportunities, and, as a result, his claim is dismissed.

### ii.  Reputation (Count III)

Next, Plaintiff alleges that statements made by the individual Defendants harmed his procedural due process rights to be secure in his reputation, in violation of the Fourteenth Amendment, pursuant to section 1983. To establish a violation of procedural due process under section 1983, a plaintiff must establish: "(1) that he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006).

Beginning with whether Plaintiff was deprived of an interest secured by the Fourteen Amendment, the Supreme Court has held that an individual has a protected liberty interest in his reputation. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). In the public-employment context, to establish a constitutional violation to his reputation, a plaintiff must show "a stigma to

8

his reputation." *Hill*, 455 F.3d at 236. (citations omitted). A plaintiff adequately pleads stigma when he alleges that the "purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Id.* However, "reputation alone is not an interest protected by the Due Process Clause." *Dee v. Borough of Dunmore*, 549 F.3d 225, 233 (3d Cir. 2008) (citing *Clark v. Township of Falls*, 890 F.2d 611, 619 (3d Cir. 1993)). To succeed on a reputation claim, a plaintiff must also allege a "deprivation of some additional right or interest." *Id.*

Here, Plaintiff has satisfied the stigma requirement of his reputation claim, but he has not sufficiently established that he was deprived of an additional right or interest. Specifically, Plaintiff adequately pleaded his reputation suffered stigma by asserting that Defendants made false, public statements that were harmful to his reputation. *See, e.g.*, ¶¶ 32, 33, 36, 54 (alleging that Defendants made "false statement to the press), 57 ("Defendants interfered with [Plaintiff's right to be secure in his reputation] . . . by announcing to the public that Plaintiff is a criminal, a "crooked" and "dirty" cop, when he has never been criminally charged."), 58 ("The statements made by Defendants are clearly harmful to Plaintiff and his reputation."). Next, in an attempt to meet a reputation claim's second requirement—the deprivation of an additional right or interest—Plaintiff asserts that the stigma associated with his reputation was harmful to his opportunities for employment. *Id.* at ¶ 58. However, the Third Circuit has counseled that "possible loss of future employment opportunities, and even outright financial harm [is] insufficient to satisfy the [] additional right or interest requirement" of a reputation claim. *Simpson v. Nicklas*, 500 F. App'x 185, 188 (3d Cir. 2012) (internal quotations and citations omitted). Thus, Plaintiff has not identified an additional right to support Count III.

Even if Plaintiff has identified an appropriate additional right to support his reputation claim, Plaintiff must also allege that the "procedures available to him did not provide 'due process

of law.'" *Hill*, 455 F.3d at 236 (citation omitted). Stated otherwise, assuming Plaintiff adequately pleaded his reputational claim, he must also establish that he suffered a procedural due process violation by not receiving "a name-clearing" hearing. *Id.* at 236, 239. Indeed, Plaintiff alleges as much, that he was not offered a "hearing to clear his name." ECF No. 14 at ¶ 58. However, Plaintiff also alleges that after receiving notice of his terminations in Disciplinary Actions 1, 2, and 3, he appealed the decisions, pursuant to "civil service statues and regulations," (*id.* at ¶ 27), and received multiple layers of appellate review (*see, e.g.*, *id.* at ¶¶ 29, 30, 41, 50). Specifically, Plaintiff admits that his appeal of Disciplinary Actions 1 and 3 was first considered by an administrative law judge, who reversed Plaintiff's termination, and ordered that Plaintiff be reinstated with an award of backpay and a 90-day suspension. *Id.* at ¶ 29. According to Plaintiff, this decision, including the reversal of Plaintiff's termination, was largely upheld by the CSC. *Id.* at ¶ 30. And finally, Plaintiff represents that the agency decision was affirmed by a New Jersey appellate court, finding that the Plaintiff engaged in no misconduct. *Id.* at ¶ 50. Likewise, regarding Disciplinary Action 2, Plaintiff asserts that an administrative law judge and the CSC review board both found in Plaintiff's favor. *Id.* at ¶¶ 41, 48. Indeed, Plaintiff does not allege that the proceedings referenced in the First Amended Complaint were deficient or did not provide him with adequate due process. In short, Plaintiff has availed himself of administrative and state appellate court proceedings through which he could clear his name. *See Dondero v. Lower Milford Township*, 431 F. Supp. 3d 590, 603 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021) ("A name-clearing hearing, such as 'in an administrative context or in a subsequent criminal trial,' will typically fully vindicate the employee's liberty interest.") (citation omitted)); *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 400 (W.D. Pa. 2012) (finding that an administrative hearing providing constitutionally sufficient due process such that there was no due process violation).

Accordingly, as he has not identified the deprivation of a valid additional right, nor alleged that procedures available to him were inadequate, Plaintiff's claim that his right to reputation based in due process was violated is dismissed.

### iii. Retaliation (Count IV)

Last among his federal constitutional challenges against the individual Defendants, Plaintiff alleges that he was retaliated against in violation of his First Amendment rights pursuant to section 1983 for appealing the City's decision to terminate him. To bring a retaliation claim under the First Amendment, a public employee, like a police officer, must show that: "(1) his [activity] is protected by the First Amendment and (2) the [activity] was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the [activity] had not occurred." *Falco v. Zimmer*, 767 F. App'x 288, 299 (3d Cir. 2019) (quoting *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015)). The first factor is a question of law, while the second factor is a question of fact. *See Gorum v. Sessoms*, 561 F.3d 179, 184 (quoting *Hill*, 455 F.3d at 241).

Regarding whether Plaintiff's activity is protected by the First Amendment, he alleges that he "engaged in protected activities by petitioning the CSC to appeal his termination." ECF No. 14 at ¶ 74. Such conduct, petitioning a government entity for relief, is indeed protected First Amendment activity. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (recognizing that the First Amendment "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes"). Accordingly, Plaintiff has adequately pleaded factor one.

Next, at factor two, the court must evaluate whether Plaintiff's petition to the CSC "was a substantial or motivating factor in the alleged retaliatory action." *Falco*, 767 F. App'x at 299 (citation omitted). Generally, an official's conduct is retaliatory when it "deter[s] a person of ordinary firmness from exercising his or her First Amendment rights." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006). This conduct "need not be great" to sustain a retaliation claim, but it must be more than de minimis. *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (quotation omitted). However, where the conduct at issue is a public official's speech, the speech constitutes a retaliatory act if there was "a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow." *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017) (citations omitted). "[C]riticism, false accusations, or verbal reprimands" do not sustain a First Amendment retaliation claim. *Noonan v. Kane*, 698 F. App'x 49, 53 (3d Cir. 2017) (quoting *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003)). In addition, irrespective of the type of conduct at issue, to establish that a measure was a "substantial or motivating factor in the retaliatory action," Plaintiff must show "some 'causal link' between the protected speech and the adverse employment action." *Falco*, 767 F. App'x at 310 (citing *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir.) (citations omitted)).

Here, Plaintiff alleges that Defendants subjected him to two retaliatory actions for appealing his termination decisions to the CSC: (1) Defendants, specifically Mayor LaBrosse, made defamatory statements about him in public, and (2) Defendants required Plaintiff, as a condition for reinstatement to active duty, to complete physical and psychological examinations. ECF No. 14 at ¶¶ 76, 80.  The Court will evaluate each of these alleged actions in turn.

Plaintiff asserts that after he appealed the City's decision to terminate him, sometime before February 2019, Defendants made statements "defaming, slandering and libeling him

12

repeatedly in public." *Id*. at ¶¶ 27, 76. Specifically, Plaintiff alleges that Labrosse called him, among other things, unfit for service (*id.* at ¶ 32), describing him as a "crooked, dirty," and "bad" police officer (*id.* ¶ 38). As this alleged conduct constitutes the speech of a public official, it is retaliatory if the speech is threatening, coercive, or intimidating. *Mirabella*, 853 F.3d at 651. However, Plaintiff alleges that Labrosse's statements as a public official are only defamatory, which is insufficient to sustain a retaliation claim. *See Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009); *see also Morrison v. City of Reading*, No. 02-cv-7788, 2007 WL 764034, at *10 (E.D. Pa. Mar. 9, 2007) ("Defamation is not actionable under § 1983."). As the First Amended Complaint is devoid of facts suggesting that Labrosse, or any of the individual Defendants, exercised speech that was coercive, intimidating, or threatening, Plaintiff's allegations are insufficient to support a retaliation claim based on Defendants' statements.

Plaintiff also alleges that City Council Members violated his First Amendment rights by condoning Labrosse and former City Manager Ehrenburg's purportedly defamatory statements about Plaintiff. Specifically, Plaintiff claims the City Council was present at a June 9, 2020 meeting when the allegedly defamatory statements were made, but the Council Members nevertheless "failed to retract the statements, as is their duty to do, thereby misleading the public that such statements were true." ECF No. 14 at ¶¶ 35–39. Generally, to successfully bring a section 1983 claim, a plaintiff must demonstrate the personal involvement of a particular defendant in the alleged wrongdoing, and liability cannot attach solely on a theory of respondeat superior. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). However, section 1983 allows for supervisors to be considered personally involved and thus liable for the actions of their subordinates under two circumstances:  where a supervisor defendant either (1) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the]

13

constitutional harm," or (2) the supervisor defendant "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Center*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (citation omitted).

Here, while neither party has argued whether the City Council Members are supervisors under section 1983, to the extent that they are, Plaintiff's claims for retaliation nonetheless fail under either theory of supervisory liability. *See Carson v. Vernon Township et al.*, No. 09-cv-6126, 2010 WL 2985849, at *21 (D.N.J. July 21, 2010) (assuming for purposes of a motion to dismiss that a municipal official was a supervisor under section 1983). First, Plaintiff asserts a vague allegation that "Defendants created and implemented the City's policies," but he identified no policy, practice or custom which caused his First Amendment harm. *See* ECF No. 14 at ¶ 75. Second, Plaintiff failed to plead how Defendants, by not retracting Labrosse and Ehrenburg's statements, violated his rights, directed others to violate his rights, or had knowledge of and acquiesced in any violations of his rights. Specifically, although Plaintiff asserts that Ehrenburg and Labrosse made their defamatory statements in the presence of the City's governing body at the June 9, 2020 meeting, he provides no facts to establish that any of the named individual Defendants, apart from Labrosse, were among those members of the Council in attendance. Without more, Plaintiff's allegations amount to group pleading, which is insufficient to establish supervisory liability under section 1983. *See Glaesener v. City of Jersey City*, No. 19-cv-18089, 2021 WL 4206297, at *3 (D.N.J. Sept. 15, 2021) (first citing *Galicki v. New Jersey*, No. 14-cv-169, 2015 WL 3970297, at *2 (D.N.J. Jun. 29, 2015), then citing *Falat v. Cnty. of Hunterdon*, No. 12-cv-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013)). As such, Plaintiff's retaliation claim

to the extent it relates to supervisory liability for allegedly defamatory statements made by Labrosse and Ehrenburg is inadequately pleaded and is dismissed.[4]

Plaintiff also asserts that Defendants retaliated against him by subjecting him to various medical examinations as a condition to his reinstatement to active duty. ECF No. 14 at ¶ 80. Even assuming this conduct constitutes retaliation, Plaintiff has insufficiently pleaded his claim. While Plaintiff contends that the examinations were retaliatory, he does not provide sufficient facts as to how the individual Defendants engaged in this conduct. He alleges that Caruso, Hackensack's current City Manager, "required Plaintiff to undergo a physical examination and a psychological fitness for duty examination . . . a condition to his reinstatement to active duty." *Id.* at ¶ 8. However, Plaintiff does not offer particularized facts describing Caruso's involvement beyond a conclusory assertion that he "required" Plaintiff to be examined. Moreover, Plaintiff's pleadings appear to contradict his allegations regarding Caruso. Specifically, later in the First Amended Complaint, Plaintiff alleges that he was "advised by the City's attorney," not Caruso or another Defendant, that the examinations were required for reinstatement. *Id.* at ¶ 52. Moreover, Plaintiff alleges that such an order must come from a law enforcement executive, but, to Plaintiff's knowledge, no law enforcement executive issued it. *Id.* at ¶ 52. And apart from these two allegations, Plaintiff makes no other specific reference to an individual Defendant regarding the examinations. *See, e.g.*, *id.* at

---

[4] To the extent Plaintiff also alleges that Labrosse is liable for Ehrenburg's comments under a theory of supervisory liability, that argument is unavailing. Plaintiff asserts that Ehrenburg made "various derogatory, slanderous, and libelous public statements concerning Plaintiff." *See* ECF No. 14 at ¶¶ 32–37. However, as noted above, absent a statement meant to threaten, coerce, or intimidate, a defamatory statement of a public official, like Ehrenburg, who was City Manager at the time he made the statements at issue, cannot sustain a section 1983 claim. *See Mun. Revenue Servs., Inc.*, 347 F. App'x at 825; *Morrison*, 2007 WL 764034, at *10. Thus, as there is no underlying wrongdoing, Labrosse cannot be liable for Ehrenburg's actions under section 1983. *See Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (noting that a supervisory liability claim brought under 1983 "necessarily includes as an element an actual violation at the hands of subordinates").

¶ 80 ("Defendants refuse . . ."; "Defendants conditioned . . ."; "Defendants assert . . ."). In sum, without more, Plaintiff has offered insufficient facts that the individual Defendants were involved with subjecting him to medical examinations as a condition for reinstatement in retaliation for filing an appeal with the CSC. *See Glaesener*, 2021 WL 4206297, at *5.

Accordingly, Plaintiff's retaliation claim as it relates to the medical examinations is dismissed without prejudice.

### B. Federal Constitutional Claims Against the City of Hackensack

In addition to his claims against the individual Defendants, Plaintiff asserts the same federal constitutional violations in Counts I, III, and IV against the City. As noted above, Plaintiff's claims in Count I to the extent it asserts a claim under the federal constitution, Count III, and Count IV against the City are dismissed without prejudice.

A municipality is liable for a constitutional violation pursuant to an action based on section 1983 when "the alleged constitutional transgression implements a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Moreover, a plaintiff must demonstrate that "a local government's policy or custom inflicted the injury in question." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Monell*, 436 U.S. at 694) (internal brackets and quotation marks omitted)). As explained above, the Plaintiff has failed to establish a constitutional violation by any of the individual Defendants (*see supra* section III.A), and thus he has also failed to plead an underlying constitutional violation in support of his claims against the City. *Stanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) ("[I]n order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights."); *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005).

Accordingly, Plaintiff's federal claims advanced in Counts I, III, and IV against the City are dismissed.

### C.      Remaining State Law Claims (Counts I and II)

The remaining claims in the First Amended Complaint appear to assert violations of Article I of the New Jersey Constitution under the NJCRA for interference with Plaintiff's interest to be secure in his employment opportunities and his reputation (Count I) (ECF No. 14 at ¶¶ 55–62), and common-law claims for "slander *per* se, defamation, and libel" (Count II) (*id.* at ¶ 67; *see generally id.* at ¶¶ 63–68). Where a "district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c).  Here, the Court dismisses all of the claims over which it has original federal question jurisdiction, and thus declines to exercise supplemental jurisdiction over the state law claims asserted in Counts I and II.  *Bonanni v. Purdy et al.*, No. 13-cv-6212, 2013 WL 6579129, at *2 (D.N.J. Dec. 13, 2013) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . .  the district court has dismissed all claims over which it has original jurisdiction") (citations and quotations omitted).

## IV.     **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is granted, and the First Amended Complaint is dismissed without prejudice. To the extent Plaintiffs can cure the deficiencies identified herein, he may file an amended pleading within thirty (30) days of the date of this decision. An appropriate Order follows.

DATED:  June 30, 2022

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**
